UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division - In Admiralty

THOMAS P. GILFILLAN,

        Plaintiff,

v.                                      No. 2:18-cv-339-RBS-DEM

DEBBIE CHEELY and
JOHN CHEELY,
d/b/a FULL THROTTLE
MARINE SERVICE,

        Defendants.

### REPORT AND RECOMMENDATION

    Plaintiff Thomas P. Gilfillan ("Plaintiff") brought this action in admiralty seeking damages from Defendants Debbie Cheely and John Cheely d/b/a Full Throttle Marine Service ("Defendants") related to an alleged contract to repair the starboard engine of a 53'9" motor vessel (the "Vessel"). Plaintiff alleges that Defendants failed to properly repair the engine over the course of several months. The Complaint asserts claims for breach of contract, breach of the implied warranty of workmanlike performance, and negligent repair of a vessel (a maritime tort). Compl. 7-11 (ECF No. 1 at 7-11). The parties are now before the court on Defendants' Motion to Dismiss for failure to state a claim. (ECF No. 13). Defendants argue that no enforceable contract for repairs to the starboard engine ever existed between the parties and that Plaintiff has not established a tort claim upon

1

which relief may be granted. See Defs.' Mem. Supp. Mot. Dismiss (ECF No. 14).

The district court referred the Motion pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). The parties submitted briefing and the court heard argument on October 9, 2018. For the reasons detailed below, the undersigned now recommends that Defendants' Motion to Dismiss be DENIED.

## I. Statement of the Case

In considering a motion to dismiss, "a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff." Silverman v. Town of Blackstone, 843 F. Supp. 2d 628, 631 (E.D. Va. 2012). So construed, the facts of this case are as follows.

In late 2016, Plaintiff was looking into purchasing the Vessel from its prior owner ("Seller"). Plaintiff hired a professional marine surveyor to conduct a pre-sale survey of the Vessel. Compl. ¶ 5 (ECF No. 1 at 2). During the survey's sea trial component, the Vessel's port engine experienced a total mechanical failure. Id. Seller then engaged Full Throttle Marine Service ("Full Throttle"), a mobile vessel servicer and marine repairer owned and operated by Defendants, to repair the port engine.[1] In April 2017,

---

[1] The pleadings indicate that Defendant John "J.T." Cheely was responsible for all the work Full Throttle did on the Vessel. Both Debbie and John Cheely remain

2

after repairs to the port engine were complete but with the Vessel sale still pending, Plaintiff retained Full Throttle to survey the starboard engine. During the sea trial, the starboard engine experienced problems as well. Seller again contracted with Full Throttle to complete the necessary repairs on the starboard engine. On June 1, 2017, after repairs to the starboard engine were complete, Plaintiff completed his purchase from Seller. Compl. ¶¶ 6-10.

Plaintiff continued to experience problems with the starboard engine post-purchase. The engine broke down twice between June 1, 2017 and August 24, 2017 and Plaintiff contacted Full Throttle each time regarding repairs. Compl. ¶¶ 11-14. Full Throttle made repairs each time, apparently without requesting or receiving payment from Plaintiff.

On August 24, 2017, the starboard engine broke down again. Plaintiff contacted Full Throttle, which diagnosed the problem as a faulty rocker arm it had installed during an earlier repair. Full Throttle said it would replace the rocker arm set at its own expense but requested that Plaintiff pay $150 for the oil change that would be required after the repair was complete. Full Throttle

---

named defendants, however counsel indicated that Debbie Cheely is not a proper named Defendant in the case. The pending motion does not address dismissal of Debbie Cheely on any separate ground.

at this time promised to return the Vessel to good working order. Plaintiff agreed to this charge, paid it, and Full Throttle made the repairs. Compl. ¶¶ 15-17.

On September 3, 2017, after the rocker arm replacement was complete, Plaintiff took the Vessel out once again, and once again the starboard engine broke down. Plaintiff investigated the engine compartment and discovered metal shards under the starboard engine. Plaintiff contacted Full Throttle and informed them of the failure and the metal shards. Full Throttle returned ten days later to examine the engine and eventually concluded that the entire starboard engine block would have to be replaced. Full Throttle said it would cover the cost and that it would follow up the next day. Compl. ¶¶ 19-23.

On September 21, 2017, Defendant John Cheely left a voicemail with Plaintiff seeking to discuss the engine change-out. Plaintiff returned the call but was unable to reach him. The next day, another Full Throttle employee informed Plaintiff that Full Throttle would no longer work on the Vessel. Compl. ¶ 24.

After a few months without contact from Full Throttle, Plaintiff sought an estimate on repairs to the starboard engine from another servicer. Before undertaking the repairs, Plaintiff hired another marine surveyor to examine the starboard engine and determine the cause of failure. The surveyor completed the inspection on April 26, 2018 and submitted a Final Report (ECF No.

19-1). The report detailed extensive damage to the starboard engine which the surveyor attributed to water intrusion caused by weld failure in an exhaust mixing manifold due to excessive heat. The report suggests that the failure was caused by improper installation of the rocker arm assembly during repairs, relying in part on Full Throttle's apparent "admission" to that effect. Id. Plaintiff paid the new servicer to complete the repairs and now claims that Defendants are liable for the cost. Compl. ¶¶ 26-31.

## II. Standard of Review

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

The plausibility requirement is not a *probability* requirement, nor is a plaintiff required to establish a prima facie case in the complaint. See Woods v. City of Greensboro, 855 F.3d

639, 646-48 (4th Cir. 2017). But the allegations "must be sufficient 'to raise a right to relief above the speculative level.'" Id. at 647 (quoting Twombly, 550 U.S. at 555).

Consideration of a motion to dismiss proceeds in two parts. First, the court must accept all the allegations in a complaint as true. Iqbal, 556 U.S. at 678. This requirement does not, however, apply to mere "legal conclusions" or "recitals of the elements of a cause of action." Id. Second, a court must determine whether the allegations state a plausible claim for relief, a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### III. Analysis

**A. Federal maritime law applies to all of Plaintiff's claims.**

"Generally, admiralty law applies to all maritime contracts." MP Leasing Corp. v. Colonna's Shipyard, 2009 A.M.C. 1462, 1467 (E.D. Va. 2009). An oral contract to repair a vessel, such as the one at issue here, is a valid maritime contract. Kossick v. United Fruit Co., 365 U.S. 731, 734-35 (1961). In admiralty cases, "a court applies federal common law and can look to state law in situations where there is no admiralty rule on point." Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc., 160 F.3d 170, 174 (4th Cir. 1998); see also La Esperanza de P.R., Inc. v. Perez y Cia. de P.R., Inc., 124 F.3d 10, 16 (1st Cir. 1997)

6

(describing sources of maritime law). Maritime law controls over conflicting state law. See MP Leasing, 2009 A.M.C. at 1467.

**B. Plaintiff has stated a plausible claim for breach of contract.**

A claim for breach of contract has three elements: (1) the existence of a valid, enforceable contract between the parties; (2) the defendant's breach of that contract; and (3) injury or damage to the plaintiff caused by that breach. See Navar, Inc. v. Fed. Bus. Council, 784 S.E.2d 296, 344 (Va. 2016). The latter two elements are not in dispute here. Assuming an enforceable contract to repair the starboard engine existed between Plaintiff and Full Throttle, Full Throttle breached it by failing to adequately complete those repairs. That breach forced Plaintiff to seek help from another servicer at substantial expense.

Rather, the claim turns on whether the parties formed a valid contract at all. This is a closer question, but the complaint does plausibly allege a contract between the parties. "The elements of a valid contract are offer, acceptance, and valuable consideration." Lester v. TMG, Inc., 896 F. Supp. 2d 482, 485 (E.D. Va. 2012). In general, "courts will not inquire into the adequacy of consideration." Jessee v. Smith, 278 S.E.2d 793, 795 (Va. 1981).

Plaintiff has advanced several theories to support the existence of a valid contract between the parties, including a third-party beneficiary formulation running back to the Seller's original repair contract with Full Throttle. The court need not

7

examine these theories in detail, as the pleadings plausibly allege the parties formed a valid oral contract for repair of the Vessel around September 1, 2017. It was about this date that Full Throttle, then on its fourth service call for the starboard engine, promised that it would "properly repair [the] Vessel, and ensure it was in good working order." Compl. ¶ 17. This promise was not purely gratuitous as Defendants allege. Rather, Plaintiff agreed to cover at least part of the cost—namely, the oil change that would be required after repairs were complete. Both parties then undertook their obligations under this agreement. Full Throttle completed additional repairs, including replacing the engine oil as required by those repairs. Plaintiff paid the agreed-upon consideration. At this stage of the litigation, this is enough to state the elements of a maritime contract. Therefore, the court should not dismiss Plaintiff's breach of contract claim.

### C. Plaintiff has stated a plausible claim for breach of the implied warranty of workmanlike performance.

Plaintiff's warranty claim follows as a natural extension of his contract claim. Ship repair contracts carry an implied warranty of workmanlike performance. See Little Beaver Enters. v. Humphreys Rys., Inc., 719 F.2d 75, 77-78 (4th Cir. 1983) (describing origins and application of the warranty); Muller Boat Works, Inc. v. Unnamed 52' House Barge, 464 F. Supp. 2d 127, 145 (E.D.N.Y. 2006) (recognizing that courts have consistently applied warranty "to

8

find fault where repair work is improperly performed"). Though it does not make a repairer a "guarantor" of results, the warranty "bind[s] the ship repairer to use the degree of diligence, attention and skill adequate to complete the task." Little Beaver, 719 F.2d at 78. Because the complaint plausibly alleges that Defendants breached this warranty when their repairs failed to remedy the starboard engine problems (and may in fact have exacerbated the damage), the court should not dismiss Plaintiff's warranty claim.

**D. Plaintiff has stated a plausible claim for maritime negligence.**

Plaintiff's maritime negligence claim arises from the same set of facts as his contract claims. Outside the maritime context, such allegations would be insufficient to support a separate negligence claim because, under Virginia law, "[a] tort action cannot be based solely on a negligent breach of contract." Richmond Metro. Auth. V. McDevitt Street Bovis, Inc., 507 S.E.2d 344, 347 (Va. 1998).

A review of maritime law, however, suggests that in some cases a plaintiff may maintain contract *and* tort claims simultaneously, even if they arise out of the same facts. Under maritime law, "a shipowner may sue in either tort or contract for negligent repairs to his vessel." La Esperanza, 124 F.3d at 16; see also Todd Shipyards Corp. v. Turbine Serv., Inc., 674 F.2d 401, 412 (5th Cir. 1982) (describing tort claim against ship repairer as

9

"negligent performance of the maritime contract"). Ship repair contracts are distinguishable from other types of contracts on this point. See 1 Thomas J. Schoenbaum, Admiralty & Maritime Law § 5.14 (6th ed. 2018) ("Ship repairers ... are subject to certain doctrines of the general maritime law in addition to their contractual undertakings."); cf. Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc., 38 F.3d 1279, 1284 (2d Cir. 1994) (dismissing negligent misrepresentation claim asserted alongside breach of contract claim arising from ship inspection contract); Maersk Line Ltd. v. CARE, 271 F. Supp. 2d 818, 820, 823 (E.D. Va. 2003) (dismissing negligence claim that was "almost identical" to breach of contract claim arising from wheat shipping contract). A ship repairer therefore faces three potential sources of liability for inadequate performance: breach of contract, breach of the implied warranty of workmanlike performance, and the maritime tort of negligence. See La Esperanza, 124 F.3d at 16-17; Schoenbaum, supra. The Federal Rules of Civil Procedure permit alternative pleading of this sort, see Fed. R. Civ. P. 8(d)(2), though double recovery is obviously not allowed, see, e.g., X-It Prods., LLC v. Walter Kiddie Portable Equip., Inc., 227 F. Supp. 2d 494, 523 (E.D. Va. 2002).

The court in MP Leasing Corp. v. Colonna's Shipyard, Inc., which also concerned a ship repair contract, denied a motion to dismiss a maritime negligence claim on the same grounds. See No.

2:07cv273, 2008 U.S. Dist. LEXIS 28485, at *10-13 (E.D. Va. Apr. 3, 2008), summary judgment granted by, judgment entered by MP Leasing Corp., 2009 A.M.C. 1462. The court emphasized that the maritime character of the claim was dispositive; under state common law, which the defendant had been citing, dismissal likely would have been proper. See id. at *13.

Defendants cite another ship repair case, decided by the undersigned, which dismissed a negligence count where contract and bailment remedies were also pled. See Lower Neuse Preservation Group, LLC v. Boats, Etc., Inc., No. 4:11cv77, 2011 WL 4565434 (E.D. Va. Sept. 28, 2011). That decision, not binding here, appears to have mistakenly relied on state law, rather than maritime law, to dismiss the negligence claim. See id. Plaintiff, plainly aware of this distinction, has tactfully avoided criticizing the opinion and instead vigorously emphasized that maritime law applies in this case.

Defendants also note that the economic loss rule ordinarily functions to preclude tort claims when a plaintiff claims only frustrated expectations as damages. See Maersk Line Ltd., 271 F. Supp. 2d at 821-23. But the intersection between this rule and the duties imposed on ship repairers under admiralty law is not entirely clear. It appears at a minimum that a maritime negligence claim will lie if the ship repairer's conduct causes harm *beyond* the simple failure to complete the contracted work. See, e.g., La

11

Esperanza, 124 F.3d at 18 (affirming negligence finding against ship repairer for damage caused by improper welds on the boat hull it was contracted to repair); MP Leasing, 2008 U.S. Dist. LEXIS 28485 (declining to dismiss negligence count where vessel under repair was stranded on marine railway after repairs were completed). Here, Plaintiff's allegations permit the reasonable inference that Defendants' negligent installation of a faulty rocker arm set in the starboard engine caused even greater damage than was originally present. That is, as alleged, Defendants did not simply fail to repair the engine under the contract, they made the problem worse. As a result, at this stage of the proceedings, and accepting all inferences in favor of Plaintiff, the court should not dismiss the maritime negligence claim.

### IV. Recommendation

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Dismiss (ECF No. 13) be DENIED.

### V. Review Procedure

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil

Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/ 
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

October 18, 2018